UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| HOMER MILLER, BECKY MILLER, and Their Minor Children, GARRETT AND WYATT MILLER | ) ) ) | CASE NO.: |
| | ) ) | **COMPLAINT** |
| Plaintiffs, | ) ) | **FOR DAMAGES, NEGLIGENCE, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, NEGLIGENCE** |
| v. | ) ) | **PER SE (STRICT LIABILITY), VIOLATION OF UNFAIR CLAIM SETTLEMENT** |
| FBL FINANCIAL GROUP, INC., SOLO, INC., and DOES 1-99, INCLUSIVE | ) ) ) | **PRACTICES (MCA §33-18-201), BREACH OF IMPLIED COVENANT GOOD FAITH & FAIR DEALING (COMMON LAW COUNT)** |
| Defendants. | ) ) | **CIVIL CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS [42 USCS 1985 (2005)]** |
| | ) ) ) ) | **FRAUD, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, LOSS OF CONSORTIUM, EXEMPLARY DAMAGES** |

---

**PARTIES**

1.      At all times pertinent to this case, Plaintiff, HOMER MILLER and Plaintiff, BECKY MILLER, were, and remain Husband and Wife, and reside in Montana with their two minor children, Wyatt, age 3 (DOB: 1-04-03) and Garrett, age 1 (DOB: 6-26-04).

2.      Defendant, FBL FINANCIAL GROUP, INC., (hereafter known as "FBL") is an Iowa corporation headquartered in West Des Moines, Iowa.

3.      At all times pertinent to these proceedings, Defendant FBL owned a subsidiary company, Farm Bureau Financial Services.

4.      At all times pertinent to these proceedings, Farm Bureau Financial Services (hereafter referred to as "FBFS"), maintained a liability policy for both bodily injury and property damage insurance coverage for Defendant, SOLO, INC.,

5.      Defendant, Solo, Inc., is a Montana corporation with its principal place of

2

business located at 511 West Kootenai Road, Rexfor, Montana.

## GENERAL JURISDICTION AND VENUE

6.      Plaintiffs are informed and believe, and thereon allege, the following regarding subject matter of Plaintiffs' claims and allegations against Defendants and each of them.

The United States District Court for the Southern District of Iowa is the appropriate forum, under both subject matter jurisdiction and venue, for Plaintiffs to file their Complaint, to wit:

a.      Counts IV, V and VI are solely against Defendant FBL Financial Group, Inc., an Iowa corporation where there is diversity jurisdiction under 28 U.S.C. §1331 and 1332.

b.      The amount in controversy exceeds seventy five thousand dollars ($75,000.00), exclusive of interest and costs.

c.      Count VII involves a federal question under 42 U.S.C. 1985.

d.      Counts I, II and III are against Solo, Inc., only and Counts VII and VIII against both Defendants, are provided subject matter jurisdiction under 28 U.S.C. §1367.

7.      Subject Matter Jurisdiction.  The United States District Court for the Southern District of Iowa has jurisdiction over a claim under either 28 U.S.C. §1331 or §1332, and it may hear all claims over which it has "original" jurisdiction.  The Federal Court in Iowa has "original" jurisdiction over Plaintiffs v. **Defendant FBL Financial Group, Inc.** (alone) under cause of actions, **four, five and six,** inclusively.  There would exist complete jurisdiction (notwithstanding complete diversity) if Plaintiff filed solely against "FBL".  In order to promote judicial economy and consistency of decision(s), by this Court, Plaintiffs should be allowed to prosecute all causes of actions against all defendants, simultaneously.(United Mine Workers v. Gibbs, 383 U.S. 715 (1960].

3

The causes of actions set forth in this moving complaint are levied against two separate Companies. The claims are "separate and independent", as alleged, against both Defendant Companies. The facts of the underlying cause of action against "Solo, Inc." arise from facts entailing premises liability and negligence which resulted in injuries sustained on June 22, 2003. The facts of the underlying causes of action against Defendant, "FBL" arose after June 22, 2003, involving respective insurer's conduct and other events occurring after the initial injuries sustained by Plaintiff, Homer Miller, on June 22, 2003. Factual and legal issues, surprisingly similar in analysis to the case at bar, are set forth in the leading Montana case of Bailey v. Scholler, 630 F. Supp. 337, 339 (D. Mont. 1986). That leading case interpreted 28 U.S.C. section 1441 (c) [removal statute] as previously decided in the case of Boggs v. Lewis, 863 F2d 662, 664 (1988) [9th Circuit Montana] In the Boggs case, supra, the negligence claim against the insured by the third party claimant was held "separate and independent" from the claim against the insurer, for purposes of 28 U.S.C. section 1441(c).

Finally, the Montana Supreme Court has construed the Unfair Trade Practices section of the state's insurance Code as conferring upon third- party claimants a separate private cause of action, for breach of the duty, to handle and settle claims in good faith. [See Montana Code annotated section 33-18-201(6); Klaudt v. Flink, 202 Mont. 247, 658 P.2d 1065 (1983).] Under Montana law, the duty running from an insurance carrier to a third-party claimant is independent of the insurer's obligation to its insured. In holding that a third-party bad faith claim could be tried *before, after or jointly* with the underlying negligence clam, the Montana Supreme Court in *Klaudt, supra,* stated:

> We see no problems with the possibility of contrary findings in the two actions, the doctrine of res judicata, collateral estoppel or the like because different issues are involved in the two cases. The issue in the action against the insurer

4

for violation of the insurance code is simply an action to determine whether or not the insurer violated its duty of fair dealing in settlement negotiations with the claimant, while the action to determine the ultimate liability of the driver rests on considerations of negligence and comparative negligence.

The obligation to negotiate in good faith and to promptly settle claims does not mean that liability has been determined.  Section 33-18-201(6) states that the insurer's obligation arises when liability has become 'reasonably clear.'   In evaluating the Insurance case, the jury must determine whether the insurer negotiated in good faith given the facts it then had.  This consideration is separate and apart from the jury's ultimate consideration of the merits of any given action.

Plaintiffs, in the case at bar, likewise, allege two separate wrongs have occurred, for which they my recover two distinct damage awards against two entirely different parties.  The claim against "FBL", while *distantly related* to the question of "Solo, Inc.'s" negligence, primarily involves the insurer's conduct, and, other factual circumstances, which arose *after* the negligence of June 22, 2003.  As such, similar to the factual and legal issues in <u>Bailey, supra,</u> multiple claims, not a single wrong, are prevalent.  Finally, Plaintiffs seek <u>separate and distinct damages</u> from both defendants.  Plaintiff's potential recovery of punitive damages against "FBL" is also entirely separate from their potential recovery from "Solo, Inc."; for economic damages arising from negligence causes of actions.

28 U.S.C. §1367 provides for supplemental jurisdiction for the State Law Claims (both Common Law and Statutory) to be joined with the other counts (IV, V, VI, and VII) over which there is federal subject matter jurisdiction to further the goal of promoting judicial economy and consistency of decision by removing obstacles to having all related controversies decided in one proceeding.

8.    <u>DOE Clause:</u> Plaintiff  alleges that the true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Does 1-99, inclusive, are unknown

to Plaintiff s who therefore sues said Defendants, by such fictitious names.  Plaintiff is informed and believes and thereon alleges  that each of the Defendants designated herein as a Doe is legally responsible in some manner for the events and happenings herein referred to, and legally caused injury and damages proximately thereby to Plaintiffs, and each of them, as herein alleged.  Plaintiffs, and each of them, will seek leave to amend this complain when each or all is ascertained.

## GENERAL ALLEGATIONS

9.     On or about June 22, 2003, Plaintiff, Homer Miller sustained serious, life-threatening injuries.

10.     Immediately prior to the Union of Marriage between Homer and Becky Miller, Homer Miller, had been a life-long member of the Amish Church, in West Kootenai, Montana.

11.     At all times pertinent to these proceedings, Defendant, "Solo Inc.", maintained said active insurance coverage policy, to encompass their real property, personal property and livestock, at the subject premises, located at 5811 West Kootenai Road, West Kootenai, Montana.  Further, that at all times pertinent to these proceedings, "Solo Inc." is comprised of a the Sturdevant family.  Those individuals reside in the States of Washington, Montana and Oklahoma.  Nancy L. Haugan, at all times pertinent to these proceedings, resided at 5811 West Kootenai Road, was, and remains the wife of Fred Sturdevant, and, was the individual entrusted to pick out the horse for Plaintiff, Homer Miller to ride, on June 22, 2003.  Ms. Haugan, was and remains a licensed veterinarian, whom treats, trains, rides and worked horses for "Solo Inc.".  Culpable conduct of Ms. Haugan would be properly attributed to Defendant, "Solo Inc." as encompassed under MCA 27-1-701.

12.     At all times pertinent to these proceedings, "FBFS" opened a claim, concerning

6

the injuries, sustained by Homer Miller, (June 22, 2003-date of incident) on  September 23, 2003.

## I.
## FIRST CAUSE OF ACTION

### NEGLIGENCE
### (PLAINTIFF, HOMER MILLER, AGAINST DEFENDANT, "SOLO, INC.")

13.     Paragraphs 1 - 12, inclusive, are incorporated herein by this reference.

14.     At all times pertinent to this cause of action, Plaintiff, Homer Miller, was an invitee onto the subject premises, owned by Defendant,  "Solo Inc."

15.   On or about June 22, 2003,   Defendant, "Solo Inc.", through the actions or omissions of their respective authorized representative and/or agent, were,  the legal,  and proximate cause of the injuries sustained by Plaintiff, Homer Miller.  The following action(s) or omissions to act, defendant, , negligently caused the damage to plaintiff, Homer Miller.

      a.     Failure to provide a seasoned, trained horse to Plaintiff, Homer Miller.

      b.     Failure to exercise ordinary care or skill, by an omission, of advising and/or warning Plaintiff, Homer Miller, of the lack of training and/or seasoning of the green horse provided to Plaintiff, Homer Miller.

      c.     At all time pertinent to this cause of action, Plaintiff, Homer Miller was intending to perform a gratuitous service for Defendant, Solo Inc.".  This service was rounding up stray cattle belonging to "Solo Inc.".

16.     At all times pertinent to these proceedings,  Plaintiff., Homer Miller, suffered, and continues to suffer damages for injuries sustained as a direct and/or legal and/or proximate cause of the aforementioned affirmative conduct and/or omissions of the Defendant, "Solo

Inc.".

## II.
## SECOND CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## (PLAINTIFFS HOMER MILLER AND BECKY MILLER AGAINST DEFENDANT "SOLO, INC.")

17.     Paragraphs 1 - 16, inclusive, are incorporated here in as if fully alleged again.

18.     As a direct and/or legal and/or proximate cause of Defendant, "Solo Inc." , its authorized representative and/or agent, and each of them,  negligent action(s) and/or omissions to act, Plaintiffs Homer Miller and/or Becky Miller,  has suffered, and continues to suffer, sever emotional distress.

19.      At all times pertinent to these proceedings, Plaintiff., Homer Miller, suffered, and continues to suffer damages for injuries sustained as a direct and/or legal and/or proximate cause of the aforementioned affirmative conduct and/or omissions of the Defendant, "Solo Inc.".

## III.
## THIRD CAUSE OF ACTION

## NEGLIGENCE PER SE
## (STRICT LIABILITY)

20.     Paragraphs 1 - 19, inclusive, are incorporated herein as if fully alleged again.

21.     At all times pertinent to this cause of action, Plaintiff, Homer Miller, was an invitee onto the subject premises, owned by Defendant,  "Solo Inc."

22.    On or about June 22, 2003,  Defendant, "Solo Inc.", through the actions or omissions of their respective authorized representative and/or agent, were,  the legal,  and proximate cause of the injuries sustained by Plaintiff, Homer Miller.  The following action(s) or

omissions to act, defendant, "Solo Inc.", negligently caused the damage to plaintiff, Homer Miller.

        a.      Failure to provide a seasoned, trained horse to Plaintiff, Homer Miller.

        b.      Failure to exercise ordinary care or skill, by an omission, of advising and/or warning Plaintiff, Homer Miller, of the lack of training and/or seasoning of the green horse provided to Plaintiff, Homer Miller.

        c.      At all time pertinent to this cause of action, Plaintiff, Homer Miller was intending to perform a gratuitous service for Defendant, Solo Inc.".  This service was rounding up stray cattle belonging to "Solo Inc.".  Further, at all times pertinent this cause of action, all members of the Sturdevant family home on June 22, 2003, able to ride and perform the gratuitous, dangerous activity, performed by Plaintiff Homer Miller, included, but not limited to, Fritz Sturdevant, Harold L. Sturdevant, and Nancy L. Haugan.

      23.      At all times pertinent, to this cause of action, rounding up cattle, in and of itself, can be reasonably associated, as a hazardous activity.  Further, when Defendant, "Solo Inc." provided Plaintiff, Homer Miller, with a "green" horse, did not advise and/or warn said Plaintiff to the extent (or lack thereof) of the training, skill, seasoning, abilities, or, other qualities associated with this particular horse, said Defendant transformed, an already potentially hazardous activity into a "dangerous activity" for Plaintiff, Homer Miller.

      24.      A dangerous activity, as defined by Montana legal standards, <u>Milasevich v. Fox Western Montana Theater Corporation,</u> 118 Mont. 265, at page 270<u>; Richardson v. Corvallis Pub.Sch.Dist.1</u> 286 Mont. 309 (1997)<u>; Gurnsey v. Conklin Co.,Inc.,</u> 230 M. 43 751 P2d 151 (1988); <u>Cassaday v. City of Billings</u> 135 Mont. 1959 (1959).  Injuries attributed to landowners, in relation to an invitee and "dangerous activity" evolved from the 1800's to the present.

Kennon v. Gilmer et. al., 5 Mont. 257 (1885); Bliss v. Wolcott, 40 Mont. 491 (1910); Thompson

v. Yellowstone Livestock Commission No. 9636 (1958) 133 Mont. 403; Restatement (Second)

of Torts section 520 (1976); Chambers v. City of Helena, (2002) 310 Mont. 241;49P.3d 587.

The legal interpretation defining a "dangerous activity" as "strict liability" by Montana standards.

(Matkovic v. Shell Oil Company, (1985) 218 Mont. 156, 707 P2d 2.)

25.     Defendant, "Solo Inc.", should be properly held strictly liable for all injuries

sustained by Plaintiff, Homer Miller, as a result of being crushed on the ground by the "green

horse" which bucked, wildly, immediately after being mounted.  Said horse thereafter fell onto

its side, on the ground, and, on the head and torso of Plaintiff, Homer Miller.  Injuries sustained

include, but are not limited to, life threatening injures of a brain concussion, broken clavicle to

his shoulder, multiple broken ribs, bruised lungs, one partially collapsed lung and a fractured

skull.

26.     At all times pertinent to these proceedings,  Plaintiff., Homer Miller, suffered, and

continues to suffer damages for residual injuries sustained as a direct and/or legal and/or

proximate cause of the aforementioned affirmative conduct, and/or, omissions, of the

Defendant, "Solo Inc.".

**IV.**
**FOURTH CAUSE OF ACTION**

**VIOLATION OF UNFAIR CLAIM SETTLEMENT PRACTICES**
**(PLAINTIFFS, HOMER MILLER AND BECKY MILLER, AGAINST DEFENDANT FBL**
**FINANCIAL GROUP, INC.)**

27.     Paragraphs 1 - 26, inclusive, are incorporated herein as if fully alleged again.

28.     Plaintiffs, Homer Miller and Becky Miller, are third-party claimants, under a policy

issued from Defendant, "FBL" to Defendant, "Solo Inc.".

29.     The subject policy, based on information and belief, and so herein alleged, is a liability policy for bodily injury and property damage encompassing the real property located at 5811 West Kootenai Road, West Kootenai, Montana; all buildings, livestock and persons whom reside on said property.   This policy has been requested voluntarily to be produced from counsel of Plaintiffs.  The policy has not been produced as of the date of this complaint.

30.     Plaintiff's Homer & Becky Miller opened a claim by notifying both the Defendant, policy holder ("Solo Inc.") and an authorized agent of Defendant "FBL".   The claim was assigned claim number B5094; on or about September 23, 2003, by claims adjustor, Carey Bertsch, on behalf of "FBFS".

31.     **The underlying claim** was partially investigated by two representatives of "FBFS".  On or about August 11, 2003, an in-person, taped interview, between John Borgialli (Claim representative with "FBFS"),  Plaintiff, Homer Miller & co-plaintiff, Becky Miller. This recorded statement attempted to portray Plaintiff, Homer Miller, as the primary responding party to all questions proffered from Mr. Borgialli.  Ultimately, the claim was denied, in part, from questions elicited during said taped interview.  In fact, the primary respondent, to questions asked by Mr. Borgialli, was co-plaintiff, Becky Miller.  Mrs. Miller's responses were characterized as "background" and gave the impression, to a reasonable person, reviewing this purported interview,  that he (Homer Miller), responded to all questions.  The actual taped interview substantiated the initial comment, from co-plaintiff, Becky Miller, stating "he  (Homer Miller) has lapses in his memory".  In fact, at the time of this interview, Mr. Miller had residual injuries still present emanating from his initial fractured skull.  Double vision, slurred speech, in addition to Diplopia.  None of these residual injuries were noted by the claims representative during the course of the taped interview.

32.   **Denial of Claim & Liability:** On September 23, 2003, Carey Bertsch, Montana

Claims Manager, for "FBFS", wrote to Homer Miller, alone, stating, in part:

> "This file has been forwarded to me for review, and follow-up to your verbal
> conversations with our area adjustor, John Borgialli.
>
> Following a thorough review of the file, I must regrettably advise you that we do
> not believe our insured is legally liable for your injuries.  I assure you tat the
> Sturdevant fell horrible about this situation, and, we at Farm bureau sincerely
> appreciate the seriousness of your injury and the financial predicament.
> However, lacking legal liability, there is little that we can do for you other than the
> Premises Medical coverage, which I understand has already been issued.  You
> are admittedly a very experienced rider, and were aware that the horse was
> "green" broke, and lastly, you were using your saddle at the time of the loss.  We
> feel that Statute Number 27-1-727 of the Montana Code Annotated (attached)
> is applicable in this situation.  Based on all of the above, we have no alternative
> but to deny your claim."

Montana Code Annotated 2003, limits, in part,  "Equine activity liability" for an "equine

activity sponsor or an equine professional is not liable for an injury to or the death of a

participant engaged in an equine activity resulting from risks inherent in equine activities."  The

primary basis for denial of the claim, in this case, was a **false representation** to an Amish-

raised individual, by a Claims Manager of an Insurance Company, that a <u>Montana Statute was

applicable and justified denial of Plaintiff's claim.</u>

The facts of this case in no way support the false contention that, at the time of the near

fatal injury to Plaintiff, Homer Miller, that (1) the Sturdevant were an "equine activity sponsor",

(2) Homer Miller was a "equine professional", and, (3) Plaintiff, was a "participant" in "equine

activity"; when he was thrown to the ground by a "green horse".  One could easily surmise, from

the denial of the claim, that Mr. Miller was injured while participating in a rodeo, while out for

prize money, and, injured during the course of a "bucking Bronc" event.

33.     Montana Code annotated, section 33-18-201, commonly referred to as "Unfair

12

Claim Settlement Practices", codified an Insurer's relation with an insured and a Claimant, for

causes of actions arising from "unfair trade practices" of an Insurer.

Montana Code annotated section 33-18-242 (2004), under the "unfair trade practices"

Act, codified the "independent cause of actions--burden of proof" of a claimant, as follows:

"33-18-242 Independent cause of action--burden of proof.

(1)     An insured or a third-party claimant has an independent cause of action against an insurer for actual damages caused by the insurer's violation of subsection (1), (4), (5), (6), (9), or (13) pf 33-18-201.

(2)     In an action under this section, a plaintiff is not required to prove that the violations were of such frequency as to indicate a general business practice.

(3)     An insured who has suffered damages as a result of the handling of an insurance claim may bring an action against the insurer for breach of the insurance contract, for fraud, or pursuant to this section, but not under any other theory or cause of action.  An insured may not bring an action for bad faith in connection with the handling of an insurance claim.

(4)     In an action under this section, the court or jury may award such damages as were proximately caused by the violation of subsection (10, (4), (5), (6)

(5)     An insurer may not be held liable under this section if the insurer had a reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is in issue.

(6)(a)  An Insured may file an action under this section, together with any other cause of action the insured has against the insurer.  Actions may be bifurcated for trial where justice so requires.

(6) (b)  <u>A third-party claimant may not file an action under this section until after the underlying claim has been settled or a judgment entered in favor of the claimant on the underlying claim.</u> **(Emphasis added)**

(7)     The period prescribed for commencement of an action under this section is:

(a)     for an insured, within two years from the date of the violation of 33-18-201; and

(b)     for a third-party claimant within 1 year from the date of the settlement of or the entry of judgment on the underlying claim.

(8)      As used in this section, an insurer includes a person, firm corporation utilizing self-insurance to pay claims made against them."

Case law exception to statutory provision 6 (b) was outlined previously in this brief.  The Montana Supreme Court in <u>Bailey, supra,</u> distinguished  "negligence cases" of third-party claimants.  This ruling was subsequently upheld and cited favorably in <u>Boggs v. Lewis</u> (1988) 863 F.2d 662 1988 U.S. App.LEXIS 17014 (9th Cir. Mont. 1988) 863 F.2d 662 at page 664<u>.</u>

34.     Statutory "unfair claim practices" alleged, in the instant case, are as follows:

a. **"**33-18-201 (1): Misrepresent pertinent facts or insurance policy provisions relating to coverages at issue;"

(1)     Defendant's, agent,  John Borgialli (Claim representative with "FBFS"), <u>misrepresented</u> and <u>distorted</u> actual facts of tape interview of Plaintiffs, Homer & Becky Miller, to assist Claims Manager, Carey Bertsch, to deny claim.

(2)     Carey Bertsch, Montana Claims Manager, for "FBFS", practiced deceptive misrepresentation citing inapplicable statute, as basis for denial of claim.    No "reasonable basis" in fact or law for this misrepresentation.

35.     Aforementioned culpable conduct of **agents** of Defendant, "FBL" [refer to paragraph No. 3, above], did proximately cause injuries and damages to Plaintiffs, Homer and Becky Miller.  Damages include, but are not limited to, economic damages and other special damages to be ascertained at the time of trial.

36.     Damages proximately caused by said aforementioned conduct, include attorney fees, as provided for by statute [MCA section 33-18-201; <u>General American Life Insurance Company, a Mutual Life Insurance Company, v. Ofner</u>, 972 F.2d 1339 (1992) 1992 U.S. App.

LEXIS 27360]

37.    Punitive or Exemplary Damages are warranted in light of the aforementioned culpable, willful and malicious conduct of Defendant, "FBL". [MCA section 33-18-201; General American Life Insurance Company, a Mutual Life Insurance Company, v. Ofner 972 F.2d 1339 (1992) 1992 U.S. App. LEXIS 27360; Alton P. Harris v. American General Life insurance Co. Of Delaware 202 Mont. 393; 658 P.2d 1089; 1983 Mont. LEXIS 612, 40 ALR 4th 1 (1983)]

**V.**
**FIFTH CAUSE OF ACTION**

**BREACH OF IMPLIED COVENANT GOOD FAITH & FAIR DEALING**
**(COMMON LAW COUNT)**
**(PLAINTIFFS, HOMER MILLER AND BECKY MILLER, AGAINST DEFENDANT FBL**
**FINANCIAL GROUP, INC.)**

38.    Paragraphs 1 - 37, inclusive, are incorporated herein as if fully alleged again.

39.    Plaintiffs, Homer Miller and Becky Miller, are third-party claimants, under a policy issued from Defendant, "FBL" to Defendant, "Solo Inc.".

40.    The subject policy, based on information and belief, and so herein alleged, is a liability policy for bodily injury and property damage encompassing the real property located at 5811 West Kootenai Road, West Kootenai, Montana; all buildings, livestock and persons whom reside on said property.  This policy has been requested voluntarily to be produced from counsel of Plaintiffs.  The policy has not been produced as of the date of this complaint.

41.    Plaintiff's Homer and Becky Miller opened a claim by notifying both the Defendant, policy holder ("Solo Inc.") and an authorized agent of Defendant "FBL".  The claim was assigned claim number B5094; on or about September 23, 2003, by claims adjustor, Carey Bertsch, on behalf of "FBFS".

42.   **The underlying claim** was partially investigated by two representatives of "FBFS".  On or about August 11, 2003, an in-person, taped interview, between John Borgialli (Claim representative with "FBFS"),  Plaintiff, Homer Miller & co-plaintiff, Becky Miller.  This recorded statement attempted to portray Plaintiff, Homer Miller, as the primary responding party to all questions proffered from Mr. Borgialli.   Ultimately, the claim was denied, in part, from questions elicited during said taped interview.  In fact, the primary respondent, to questions asked by Mr. Borgialli, was co-plaintiff, Becky Miller.  Mrs. Miller's responses were characterized as "(Background)" and gave the impression, to a reasonable person, reviewing this purported interview,  that he (Homer Miller), responded to all questions.   The actual taped interview substantiated the initial comment, from co-plaintiff, Becky Miller, stating "he  (Homer Miller) has lapses in his memory".   In fact, at the time of this interview, Mr. Miller had residual injuries still present emanating from his initial fractured skull.  Double vision, slurred speech, in addition to Diplopia.  None of these residual injuries were noted by the claims representative during the course of the taped interview.

43.   **Denial of Claim & Liability:** On September 23, 2003, Carey Bertsch, Montana Claims Manager, for "FBFS", wrote to Homer Miller, alone, stating, in part:

> "This file has been forwarded to me for review, and follow-up to your verbal conversations with our area adjustor, John Borgialli.
>
> Following a thorough review of the file, I must regrettably advise you that we do not believe our insured is legally liable for your injuries.  I assure you tat the Sturdevant fell horrible about this situation, and, we at Farm bureau sincerely appreciate the seriousness of your injury and the financial predicament. However, lacking legal liability, there is little that we can do for you other than the Premises Medical coverage, which I understand has already been issued.  You are admittedly a very experienced rider, and were aware that the horse was "green" broke, and lastly, were using your saddle at the time of the loss.  We feel that Statute Number 27-1-727 of the Montana Code Annotated (attached) is applicable in this situation.  Based on all of the above, we have no alternative but

16

to deny your claim."

Montana Code Annotated 2003, limits, in part,  "Equine activity liability" for an "equine activity sponsor or an equine professional is not liable for an injury to or the death of a participant engaged in an equine activity resulting from risks inherent in equine activities."  The primary basis for denial of the claim, in this case, was a **false representation** to an Amish-raised individual, by a Claims Manager of an Insurance Company, that a <u>Montana Statute was applicable and justified denial of Plaintiff's claim.</u>

The facts of this case in no way support the false contention that, at the time of the near fatal injury to Plaintiff, Homer Miller, that (1) the Sturdevant were an "equine activity sponsor", (2) Homer Miller was a "equine professional", and, (3) Plaintiff, was a "participant" in "equine activity"; when he was thrown to the ground by a "green horse".  One could easily surmise, from the denial of the claim that Mr. Miller was injured while participating in a rodeo and was out for prize money when injured during the course of a bucking Bronc event.

44.     COMMON LAW BAD FAITH claim practices alleged in the instant case are alleged as follows:

Misrepresent pertinent facts or insurance policy provisions relating to coverages at issue.  COMMON LAW precedent authority, include, but are not limited to, {<u>Stephens v. Safeco Insurance Company of America,</u> (1993) 258 Mont. 142; 852 P.2d 565, at pages 568-569 (duty to reasonably settle third party claims within policy limits-third-party action premised in Tort vs. Insured in Contract) <u>Klaudt v. Flink,</u> (1983) 202 Mont. 247; 658 P.2d 1065, at page 1068 (common law cause of action for fraud by third party claimant allowable notwithstanding final judgment on underlying claim); <u>Lipinski v. Title Insurance Company,</u> 202 Mont. 1, 655 P.2d 970

17

(1982--Common LAW bad faith Tort).]

      a.    Defendant's, agent,  John Borgialli (Claim representative with "FBFS"), misrepresented and distorted actual facts of tape interview of Plaintiffs, Homer & Becky Miller, to assist Claims Manager, Carey Bertsch, to deny claim.

      b.    Carey Bertsch, Montana Claims Manager, for "FBFS", practiced deceptive misrepresentation citing inapplicable statute, as basis for denial of claim.   No "reasonable basis" in fact or law for this misrepresentation.

    45.    Aforementioned culpable conduct of **agents** of Defendant, "FBL" [refer to paragraph No. 3, above], did proximately cause injuries and damages to Plaintiffs, Homer & Becky Miller.  Damages include but are not limited to economic damages and other special damages to be ascertained at the time of trial.

    46.    Damages proximately caused by said aforementioned conduct, include attorney fees, as provided for by case precedent. General American Life Insurance Company, a Mutual Life Insurance Company, v. Ofner 972 F.2d 1339 (1992) 1992 U.S. App. LEXIS 27360

    47.    Punitive or Exemplary Damages are warranted in light of the aforementioned culpable, willful and malicious conduct of Defendant, "FBL". General American Life Insurance Company, a Mutual Life Insurance Company v. Ofner, 972 F.2d 1339 (1992) 1992 U.S. App. LEXIS 27360; Alton P. Harris v. American General Life insurance Co. Of Delaware,  202 Mont. 393; 658 P.2d 1089; 1983 Mont. LEXIS 612, 40 ALR 4th 1 (1983)

**VI.**
**SIXTH CAUSE OF ACTION**

**FRAUD**
**(PLAINTIFFS, HOMER MILLER AND BECKY MILLER AGAINST DEFENDANT FBL**
**FINANCIAL GROUP, INC.)**

48.     Paragraphs 1 - 47, inclusive, are incorporated herein as if fully alleged again.

49.     Plaintiffs, Homer Miller and Becky Miller, are third-party claimants, under a policy issued from Defendant, "FBL" to Defendant, "Solo Inc.".

50.     The subject policy, based on information and belief, and so herein alleged, is a liability policy for bodily injury and property damage encompassing the real property located at 5811 West Kootenai Road, West Kootenai, Montana; all buildings, livestock and persons whom reside on said property.   This policy has been requested voluntarily to be produced from counsel of Plaintiffs.  The policy has not been produced as of the date of this complaint.

51.     Plaintiff's Homer and Becky Miller opened a claim by notifying both the Defendant, policy holder ("Solo Inc.") and an authorized agent of Defendant "FBL".  The claim was assigned claim number B5094; on or about September 23, 2003, by claims adjustor, Carey Bertsch, on behalf of "FBFS".

52.     **The underlying claim** was partially investigated by two representatives of "FBFS".  On or about August 11, 2003, an in-person, taped interview, between John Borgialli (Claim representative with "FBFS"),  Plaintiff, Homer Miller & co-plaintiff, Becky Miller. This recorded statement attempted to portray Plaintiff, Homer Miller, as the primary responding party to all questions proffered from Mr. Borgialli.  Ultimately, the claim was denied, in part, from questions elicited during said taped interview.  In fact, the primary respondent, to questions asked by Mr. Borgialli, was co-plaintiff, Becky Miller.  Mrs. Miller's responses were characterized as "(Background)" and gave the impression, to a reasonable person, reviewing this purported interview,  that he (Homer Miller), responded to all questions.  The actual taped interview substantiated the initial comment, from co-plaintiff, Becky Miller, stating "he  (Homer Miller) has lapses in his memory".  In fact, at the time of this interview, Mr. Miller had residual injuries still

present emanating from his initial fractured skull.  Double vision, slurred speech, in addition to Diplopia.  None of these residual injuries were noted by the claims representative during the course of the taped interview.

     53.   **Denial of Claim and Liability:** On September 23, 2003, Carey Bertsch, Montana Claims Manager, for "FBFS", wrote to Homer Miller, alone, stating, in part:

> "This file has been forwarded to me for review, and follow-up to your verbal conversations with our area adjustor, John Borgialli.
>
> Following a thorough review of the file, I must regrettably advise you that we do not believe our insured is legally liable for your injuries.  I assure you that the Sturdevant fell horrible about this situation, and, we at Farm bureau sincerely appreciate the seriousness of your injury and the financial predicament. However, lacking legal liability, there is little that we can do for you other than the Premises Medical coverage, which I understand has already been issued.  You are admittedly a very experienced rider, and were aware that the horse was "green" broke, and lastly, were using your saddle at the time of the loss.  We feel that Statute Number 27-1-727 of the Montana Code Annotated (attached) is applicable in this situation.  Based on all of the above, we have no alternative but to deny your claim."

     Montana Code Annotated 2003, limits, in part,  "Equine activity liability" for an "equine activity sponsor or an equine professional is not liable for an injury to or the death of a participant engaged in an equine activity resulting from risks inherent in equine activities."  The primary basis for denial of the claim, in this case, was a **willfully false representation,** to an Amish-raised individual, by a Claims Manager of an Insurance Company, claiming a <u>Montana Statute was both applicable and justified denial of Plaintiff's claim.</u>

     The facts of this case in no way support the false contention that, at the time of the near fatal injury to Plaintiff, Homer Miller, that (1) the Sturdevant were an "equine activity sponsor", (2) Homer Miller was a "equine professional", and, (3) Plaintiff, was a "participant" in "equine activity"; when he was thrown to the ground by a "green horse".  One could easily surmise, from

the denial of the claim that Mr. Miller was injured while participating in a rodeo and was out for prize money when injured during the course of a bucking Bronc event.

54.    COMMON LAW BAD FAITH claim practices alleged in the instant case are alleged as follows:

**Fraudulently misrepresent** pertinent facts or insurance policy provisions relating to coverages at issue.  COMMON LAW precedent authority, include, but are not limited to, Stephens v. Safeco Insurance Company of America, (1993) 258 Mont. 142; 852 P.2d 565, at pages 568-569 (duty to reasonably settle third party claims within policy limits-third-party action premised in Tort vs. Insured in Contract); Klaudt v. Flink, (1983) 202 Mont. 247; 658 P.2d 1065, at page 1068 (common law cause of action for fraud by third party claimant allowable notwithstanding final judgment on underlying claim); Lipinski v. Title Insurance Company, 202 Mont. 1, 655 P.2d 970 (Mont. 1982--Common LAW bad faith Tort).]

a.     Defendant's, agent,  John Borgialli (Claim representative with "FBFS"), **fraudulently misrepresented** and distorted actual facts of tape interview of Plaintiffs, Homer & Becky Miller, to assist Claims Manager, Carey Bertsch, to deny claim.

b.     Carey Bertsch, Montana Claims Manager, for "FBFS", practiced deceptive misrepresentation citing inapplicable statute, as basis for denial of claim.    No "reasonable basis" in fact or law for this fraudulent misrepresentation.

55.    At all times pertinent to this cause of action, Defendant, "FBL", its agents and/or authorized representatives of "FBFS" had a duty of care to act in good faith and fair dealings with Plaintiffs, and each of them. Said Defendants violated this duty to act in good faith.  In **reliance, upon the willfully fraudulent, malicious,** culpable conduct of Defendant, "FBL",

Plaintiffs, and each of them, relied upon the denial of their claim to their detriment.  Detriment, in this instance,  includes but is not limited to, adopting a belief in the truthfulness of "FBL"'s denial of their claim.  Plaintiff's reliance to their respective  detriment was exacerbated by loss of earnings, on-going incurring medical debts, and, an onset of emotional distress.  The aforementioned culpable conduct of **agents** of Defendant, "FBL" [refer to paragraph No. 7, above], did proximately cause injuries and damages to Plaintiffs, Homer & Becky Miller. Damages include but are not limited to economic damages and other special damages to be ascertained at the time of trial.

56.     Damages proximately caused by said aforementioned conduct include attorney fees, as allowed by case precedent. [General American Life Insurance Company, a Mutual Life Insurance Company, v. Ofner 972 F.2d 1339 (1992) 1992 U.S. App. LEXIS 27360]

57.     Punitive or Exemplary Damages are warranted in light of the aforementioned culpable, willful, fraudulent, and, malicious conduct of Defendant, "FBL". General American Life Insurance Company, a Mutual Life Insurance Company v. Ofner,  972 F.2d 1339 (1992) 1992 U.S. App. LEXIS 27360; Alton P. Harris v. American General Life insurance Co. Of Delaware, 202 Mont. 393; 658 P.2d 1089; 1983 Mont. LEXIS 612, 40 ALR 4th 1 (1983)]

**VII.**
**SEVENTH CAUSE OF ACTION**

**CIVIL CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**
**(PLAINTIFFS, HOMER MILLER AND BECKY MILLER AGAINST DEFENDANT FBL**
**FINANCIAL GROUP, INC., AND DEFENDANT "SOLO, INC.")**

58.     Paragraphs 1 - 57, inclusive, are incorporated herein as if fully alleged again.

59.     Plaintiffs, Homer Miller and Becky Miller, are third-party claimants, under a policy issued from Defendant, "FBL" to Defendant, "Solo Inc.".

60.    The subject policy, based on information and belief, and so herein alleged, is a liability policy for bodily injury and property damage encompassing the real property located at 5811 West Kootenai Road, West Kootenai, Montana; all buildings, livestock and persons whom reside on said property.   This policy has been requested voluntarily to be produced from counsel of Plaintiffs.  The policy has not been produced as of the date of this complaint.

61.    Plaintiff's Homer and Becky Miller opened a claim by notifying both the Defendant, policy holder ("Solo Inc.") and an authorized agent of Defendant "FBL".  The claim was assigned claim number B5094; on or about September 23, 2003, by claims adjustor, Carey Bertsch, on behalf of "FBFS".

62.    **The underlying claim** was partially investigated by two representatives of "FBFS".  On or about August 11, 2003, an in-person, taped interview, between John Borgialli (Claim representative with "FBFS"), Plaintiff, Homer Miller & co-plaintiff, Becky Miller. This recorded statement attempted to portray Plaintiff, Homer Miller, as the primary responding party to all questions proffered from Mr. Borgialli.  Ultimately, the claim was denied, in part, from questions elicited during said taped interview.  In fact, the primary respondent, to questions asked by Mr. Borgialli, was co-plaintiff, Becky Miller.  Mrs. Miller's responses were characterized as "(Background)" and gave the impression, to a reasonable person, reviewing this purported interview,  that he (Homer Miller), responded to all questions.   The actual taped interview substantiated the initial comment, from co-plaintiff, Becky Miller, stating "he  (Homer Miller) has lapses in his memory".  In fact, at the time of this interview, Mr. Miller had residual injuries still present emanating from his initial fractured skull.  Double vision, slurred speech, in addition to Diplopia.  None of these residual injuries were noted by the claims representative during the course of the taped interview.

23

Plaintiffs, home and Beck Miller were thereafter informed by Mr. Borgialli that he would be meeting and conferring with individuals of Defendant, "Solo Inc.".  Based on this information and coupled with the statement of Mr. Bertsch, in his denial of the claim, the refusal of Defendant. "Solo Inc.," to cooperate with disclosure of the subject policy, it is alleged that the denial of the subject claim, in part, is properly attributed to a conspiracy between both Defendants; premised on the following special facts:

a.      Plaintiff, Homer Miller was born and raised Amish.  He left the Amish Church shortly before marriage to co-plaintiff, Becky Miller, in approximately 1998.

b.      Amish belief and Amish principles do not allow for initiating civil suits in any Court forum.

c.      Defendant, "Solo Inc", is comprised of the Sturdevant family.  This family knew both Homer and Becky Miller personally for their entire lives.  Both the Millers and Sturdevant families lived together in the small, rural community of West Kootenai over the past twenty five years.

d.      Mr. Bertsch's letter of denial substantiates that [paragraph 60 below] "I assure you that the **Sturdevant feel horrible** about **this situation**, and, we at Farm bureau sincerely **appreciate the seriousness of your injury and the financial predicament**."  This passage is reflective of the facts and insight the Sturdevant provided to Mr. Bertsch about Homer and Becky Miller.  The background unquestionably entailed Mr. Miller's background as Amish.

e.      The facts of this case in no way support the false contention that, at the time of the near fatal injury to Plaintiff, Homer Miller, that (1) the Sturdevant were an "equine activity sponsor", (2) Homer Miller was a "equine professional", and, (3) Plaintiff, was a

"participant" in "equine activity"; when he was thrown to the ground by a "green horse". Either

both Defendants conspired to dissuade Plaintiffs from pursuing litigation, or, Defendant, "FBL",

*alone* chose to proffer, on behalf of Defendant, "Solo Inc.", ludicrous facts unsupported by any

intake from the Sturdevant.   Based on information and belief, Plaintiffs allege that both

Defendants conspired to defraud Plaintiffs, jointly.

63.    **Denial of Claim & Liability:** On September 23, 2003, Carey Bertsch, Montana

Claims Manager, for "FBFS", wrote to Homer Miller, alone, stating, in part:

> This file has been forwarded to me for review, and follow-up to your verbal
> conversations with our area adjustor, John Borgialli.
>
> Following a thorough review of the file, I must regrettably advise you that we do
> not believe our insured is legally liable for your injuries.  I assure you tat the
> Sturdevant fell horrible about this situation, and, we at Farm bureau sincerely
> appreciate the seriousness of your injury and the financial predicament.
> However, lacking legal liability, there is little that we can do for you other than the
> Premises Medical coverage, which I understand has already been issued.  You
> are admittedly a very experienced rider, and were aware that the horse was
> "green" broke, and lastly, were using your saddle at the time of the loss.  We feel
> that Statute Number 27-1-727 of the Montana Code Annotated (attached) is
> applicable in this situation.  Based on all of the above, we have no alternative but
> to deny your claim.

Montana Code Annotated 2003, limits, in part,  "Equine activity liability" for an "equine

activity sponsor or an equine professional is not liable for an injury to or the death of a

participant engaged in an equine activity resulting from risks inherent in equine activities."  The

primary basis for denial of the claim, in this case, was a **willfully false representation** to an

Amish-raised individual, by a Claims Manager of an Insurance Company, asserting  a <u>Montana

Statute was both  applicable and justified denial of Plaintiff's claim.</u>

The facts of this case in no way support the false contention that, at the time of the near

fatal injury to Plaintiff, Homer Miller, that (1) the Sturdevant were an "equine activity sponsor",

(2) Homer Miller was a "equine professional", and, (3) Plaintiff, was a "participant" in "equine activity"; when he was thrown to the ground by a "green horse".  One could easily surmise, from the denial of the claim that Mr. Miller was injured while participating in a rodeo and was out for prize money when injured during the course of a bucking Bronc event.

64.    Statutory prohibition against interfering with the civil rights of another, as stated in 42 USCS § 1985 (3) (2005), allege, in the instant case, a conspiracy to interfere with civil rights of the Plaintiffs, as follows:

a.    42 USCS § 1985 (c): "Depriving persons of rights or privileges.  If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving , either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws , . . .or to cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any rights or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

b.    The fraudulently misrepresentations of both pertinent facts and insurance policy provisions alleged to be excluded by Montana Statute, was motivated against an Amish "class animus".   Monetary gain by Defendants, John Borgialli, Carey Bertsch and the Sturdevant precipitated the fraudulent misrepresentations.  It was personally known to the Sturdevant that Homer Miller was Amish born and raised.  The Amish are a predominant class residing in the West Kootenai community.  It is common knowledge amongst all individuals whom reside in said community that Amish do not initiate lawsuits.  A person of authority, as

26

a Claims Manager for an insurance Company, is an individual of sufficient authority that an Amish would rely upon thereby obviating the worry of uncovering clear, malicious, willful, fraudulent misrepresentations; as follows:

(1)    Defendant's, agent,  John Borgialli (Claim representative with "FBFS"), fraudulently misrepresented and distorted actual facts of tape interview of Plaintiffs, Homer & Becky Miller, to assist Claims Manager, Carey Bertsch, to deny the subject claim.

(2)    Carey Bertsch, Montana Claims Manager, for "FBFS", practiced deceptive misrepresentation citing inapplicable statute, as basis for denial of said claim.  At that time, no  "reasonable basis" in fact or law existed, for this fraudulent misrepresentation.

65.    At all times pertinent to this cause of action, Defendant, "FBL", its agents and/or authorized representatives of "FBFS" had a duty of care to act in good faith and fair dealings with Plaintiffs, and each of them. Said Defendants violated this duty to act in good faith.  In **reliance,** upon the willfully fraudulent, malicious**,** culpable conduct of Defendant, "FBL", Plaintiffs, and each of them, relied upon the denial of their claim, to their detriment.  Detriment, in this instance,  includes but is not limited to, adopting a belief in the truthfulness of "FBL"'s denial of their claim.  Plaintiff's reliance to their respective  detriment was exacerbated by loss of earnings, on-going incurring medical debts, and, an onset of emotional distress.  The aforementioned culpable conduct of agents of Defendant, "FBL" [refer to paragraph No. 3, above], did proximately cause injuries and damages to Plaintiffs, Homer & Becky Miller. Damages include but are not limited to economic damages and other special damages to be ascertained at the time of trial.

66.    Damages proximately caused by said aforementioned conduct, include attorney fees, as allowed by   42 USCS § 1985.

27

67.     Punitive or Exemplary Damages are warranted in light of the aforementioned culpable, willful, fraudulent, and, malicious conduct of Defendants, "FBL" and "Solo Inc.".

[42 USCS § 1985]

## VIII.
## EIGHTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (PLAINTIFFS, HOMER MILLER AND BECKY MILLER AGAINST DEFENDANT FBL
## FINANCIAL GROUP, INC., AND DEFENDANT "SOLO, INC.")

68.     Paragraphs 1 - 67, inclusive, are incorporated herein as if fully alleged again.

69.     As a direct and/or legal and/or proximate cause of defendants, "FBL" and  "Solo Inc." , its authorized representative(s) and/or agent(s), and each of them, INTENTIONAL action(s) and/or intentional omissions to act, Plaintiffs Homer Miller and Becky Miller,  have suffered, and continues to suffer, severe emotional distress.

70.     At all times pertinent to these proceedings,  Plaintiffs., Homer Miller and Becky Miller, suffered, and continues to suffer damages for injuries sustained as a direct and/or legal and/or proximate cause of the aforementioned affirmative conduct and/or omissions of the Defendant, "FBL" and "Solo Inc.".

71.     Punitive or Exemplary Damages are warranted in light of the aforementioned culpable, willful, fraudulent, and, malicious conduct of Defendant, "FBL". General American Life Insurance Company, a Mutual Life Insurance Company v. Ofner, 972 F.2d 1339 (1992) 1992 U.S. App. LEXIS 27360; Alton P. Harris v. American General Life insurance Co. Of Delaware, 202 Mont. 393; 658 P.2d 1089; 1983 Mont. LEXIS 612, 40 ALR 4th 1 (1983)]

## IX.
## NINTH CAUSE OF ACTION

## LOSS OF CONSORTIUM

**(PLAINTIFFS, BECKY MILLER, WYATT MILLER, GARRETT MILLER AGAINST DEFENDANT FBL FINANCIAL GROUP, INC., AND DEFENDANT "SOLO, INC,")**

72.     Paragraphs 1 - 71, inclusive, are incorporated herein as if fully alleged again.

73.     As a direct and/or legal and/or proximate cause of Defendant, FBL Financial Group, Inc. And Defendant, "Solo Inc." , their authorized representative(s) and/or agent(s), and each of them,  negligent/intentional conduct and/or omissions to act, Plaintiffs Becky Miller, Wyatt Miller Garret Miller,  has suffered, and continues to suffer, sever emotional distress, loss of consortium, with co-plaintiff, Homer Miller.  Loss of consortium includes, but is not limited to, losses associated with a Father/Husband unable to participate with, associate with, enjoy with, functions and affections due to the injuries incurred on June 22, 2003; as related above, in all causes of actions.

74.     At all times pertinent to these proceedings,  Plaintiffs., Becky Miller, Wyatt Miller Garret Miller, suffered, and continues to suffer damages for injuries sustained as a direct and/or legal and/or proximate cause of the aforementioned affirmative conduct and/or omissions of the Defendant, "Solo Inc." and Defendant, FBL Financial Group, Inc.

WHEREFORE, Plaintiffs, and each of them, respectively,  prays for judgment against the Defendants, and each of them, as follows:

1. General damages to Plaintiffs, and each of them, in accordance with proof thereof;

2. Special damages to Plaintiffs, and each of them, in accordance with proof thereof;

4. Costs of suit incurred herein;

5. For pre-judgment interest where permitted under applicable law, and;

Fourth, Fifth, Sixth, Seventh and Eight Causes of Actions as alleged:

6. For reasonable attorney's fees, as provided for, by case law and/or statute.

<u>Fourth, Fifth, Sixth, Seventh and Eight Causes of Actions as alleged:</u>

    7. Exemplary or punitive damages according to proof.

    8. For such other relief as the Court deems proper and just.

                                     PASLEY AND SINGER LAW FIRM, L.L.P.


_____
JOHN L. TIMMONS           ST0005626
323 6th Street, P.O. Box 664
Ames, IA 50010
Phone (515) 232-4732
Fax (515) 232-4756
ATTORNEY FOR PLAINTIFFS

**DEMAND FOR TRIAL BY JURY**

    COME NOW Plaintiffs and demand trial by jury in the above referenced action.